FORET, Judge.
Plaintiff-appellant, Warren J. Moity, instituted this suit against Swift Agricultural Chemical Corporation[1] alleging a breach of contract involving rye grass seed purchased by Moity from Swift having allegedly failed to germinate, resulting in various items of damage to Moity. The trial court granted judgment in favor of Moity in the amount of Three Thousand One Hundred Forty-Four and No/100 ($3,144.00) Dollars on February 28, 1975, but then amended the judgment to grant a portion of the recon-ventional demand of Swift against Moity in the total amount of Six Hundred Two and *288 22/100 ($602.22) Dollars, being the cost of items furnished to Moity by Swift which were unrelated to the rye grass crop. Both parties appealed.
Swift, in this appeal, maintains that the trial court committed manifest error in concluding that the defendant breached the contract to furnish fertilizer and seed that would perform as represented, and further that the trial court committed manifest error in finding as a fact that the ammonium nitrate burned or killed the rye grass seed in question. We agree on both assignments of error.
The record reveals that in the summer of 1973 plaintiff called defendant’s plant at Lewisburg, Louisiana, and booked some rye grass seed for the coming fall. On September 19, 1973, plaintiff requested that defendant mix the rye grass seed and fertilizer together and deliver to plaintiff for planting, plaintiff telling Aubrey Miller, Plant Manager for defendant, that he wanted grazing in two weeks, which, according to Miller, was impossible. According to Miller, at that time, a discussion took place between plaintiff and Miller wherein Miller advised plaintiff that it was too early to plant rye grass seed on an old sod pasture, and tried to discourage him from planting at that time. However, plaintiff insisted that he had “bought a bunch of cows” and he had to have grass to put them on to graze.
The record further reveals that on the afternoon of the 19th defendant commenced mixing rye grass seed and ammonium nitrate in the proportions which plaintiff and defendant had agreed upon, that is, four hundred pounds of ammonium nitrate to forty pounds of rye grass seed for each acre to be planted, for a total of one hundred twenty acres. While the record reveals that some memories are a little hazy on this point, the record does reveal, and this Court so finds that mixing the ammonium nitrate and rye grass seed commenced in the afternoon of September 19th, and except for an insignificant amount, all of the fertilizer and seed was spread in plaintiff’s field by the afternoon of September 21st.
About a week after the planting, plaintiff went to defendant’s plant in Lewisburg and filed a customer complaint form stating that his rye grass was not coming up. Plaintiff had several more discussions with defendant’s agents about the alleged problems, and subsequently this litigation ensued.
The trial judge handed down written reasons for judgment. This Court agrees with his findings that the defendant furnished certified, viable seed to the plaintiff, which was certified 95% pure. Further, the trial court correctly stated that plaintiff went into the cattle business unprepared, and that his losses were due as much to his inexperience, lack of foresight, and lack of planning, as to any other cause. However, this Court, from a review of the record and the testimony of expert witnesses, including two of plaintiff’s own witnesses, Dr. Lynn J. Deselle and Dr. Daniel P. Viator, qualified agronomists, cannot agree with the trial court’s finding that the ammonium nitrate “burned” or killed the seed, and consequently the seed did not germinate. The tests conducted by Dr. Deselle and his associate Dr. Viator, showed that the germination potential of the various samples of seed after 24, 48, and 72 hours of being mixed with the ammonium nitrate, was not appreciably affected under conditions similar to those which existed during the time of the year when plaintiff planted his pasture. These tests conducted by plaintiff’s experts repudiate the trial court’s finding that the ammonium nitrate killed or burned the rye grass seed, and accordingly we find that the trial court erred in its finding to that effect.
The overwhelming weight of the evidence from the expert witnesses is that plaintiff’s decision to plant his pasture at the time that he did, September 19, was entirely too early during the season to do so. Weather conditions are too warm for proper germination; plus, planting rye grass seed in an old sod pasture with summer grass growing therein, and at the same time fertilizing the *289 pasture, will result in little or no germination of rye grass for the simple reason that the summer grass presently growing will continue to grow, and in fact grow even faster with fertilization. As a consequence, the germination and growth of the rye grass will be choked out by the summer grass and hence no stand of rye grass will be achieved. Plaintiff himself testified that he had been told by a county agent that early planting would adversely affect germination. In plaintiff’s deposition, which is of record, is the following testimony:
“Q. Did you ever talk to the county agent about how early you should plant rye grass?
A. Yes.
Q. And what did he say?
A. You’re better off waiting .until it’s cool, but I had a condition which was different.
Q. Okay, now, did he tell you why you should wait until it’s cool?
A. It will be best for germination.
Q. And what was your condition that was different?
A. I needed pasture, that’s why I wanted.
Q. That’s why you wanted to plant it earlier?
A. That’s why I wanted pasture early.
Q. But you knew that if the seed wouldn’t germinate, you wouldn’t get pasture, didn’t you? I mean you know enough about farming to know that.
A. Oh, without it germinating, that’s right. I think that is a fair conclusion.”
All of the experts agreed that October 15 is about the earliest time that it is practical to get a rye grass crop when rye grass is seeded over an existing pasture. William E. Monroe, a pasture specialist for the Cooperative Extension Service at L.S.U., summed up the situation as follows regarding the overseeding of rye grass on permanent pasture:
“Our recommendation is based on research work that has been conducted at LSU. We feel that there is an absolute must, and this must is the thing that we feel has caused more failures over the past years, and that is to make sure that you remove all the excess grass from the warm season crop prior to the time that you plant your cool season grass. This is the first consideration. The second consideration is the time of seeding, and based also on research work that has been conducted, we found that if you seed rye grass too early in the year, you lose complete stand simply because if you get rye grass up while the warm season grass is still active or still actively growing, you fertilize the rye grass, and .actually what happens you get a growth of your warm season grass crowding out your cool season grass, and when the frost comes to kill your warm season grass, then you have nothing left.”
For the foregoing reasons, this Court finds that the trial court erred in awarding judgment for plaintiff, Moity, and that judgment is reversed, and Moity’s suit is dismissed with prejudice.
Defendant, Swift Agricultural Chemical Corporation, had filed a recon ven tional demand for the amount of $3,152.22 for rice seed, ammonium nitrate and equipment for the planting and spreading thereof, and judgment is rendered in favor of Swift Agricultural Chemical Corporation and against Warren J. Moity for that amount, plus legal interest thereon from date of judicial demand. Plaintiff, Warren J. Moity, is cast for all costs of this appeal.
REVERSED IN PART, AMENDED IN PART, AND RENDERED.

. Effective January 1, 1973, defendant’s corporate name was changed to “Swift Chemical Company.”